UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

EDDIE FAIR,                           )          Case No. 1:05CV1189
                                      )
            Plaintiff,                )
                                      )
      vs.                             )
                                      )          MEMORANDUM OPINION
                                      )
STATE FARM FIRE & CAS.  CO.,          )
                                      )
            Defendant.                )          Magistrate Judge McHargh
                                      )

On the evening of Nov. 26, 2002, plaintiff Eddie Fair ("Fair") reported a

burglary to Parma police.  (Doc. 1; doc. 36, DX 4, complaint[1], at ¶¶ 5-6.)  Fair

had just returned to Ohio from a three-day visit to his home town of Flint,

Michigan.

On the police report completed that night, Fair was able to itemize

missing items with a total claimed value of $31,175.00, including $3,500.00 in

cash which was left in his bedroom when he left town.  (Compl., at ¶ 5; doc. 36,

DX 9, police report; doc. 36, DX 8, Fair dep., at 65-68.)  Fair asserted that he

was able to recall the details of many of the missing property items because he

_____

[1]The copy of the complaint contained in the Notice of Removal is missing the
second page; the defendant has attached a copy of the complaint in its exhibits.

had just recently bought those items as gifts, with cash from a large annual bonus check.  (Doc. 38, PX 2, at 18, 29; doc. 36, DX 8, Fair dep., at 19, 87-88.)

At the time, Fair had an insurance policy ("Renters Policy" #70-LV-4627-8) with defendant State Farm Fire & Casualty Co. ("State Farm").  (Compl., at ¶¶ 3, 8; doc 36, DX 3, policy.)  Fair filed a claim for loss under the policy, and submitted a "sworn proof of loss" on the claim (#35-H050-221) on Dec. 12, 2002. (Doc. 36, DX 11.)

As part of their investigation of the claim, State Farm taped an unsworn interview with Fair on Dec. 6, 2002[2].  (Doc. 36, DX 7.)  Subsequently, a sworn deposition of Fair was conducted on Jan. 9, 2003.  (Doc. 36, DX 8.)

On May 6, 2003, State Farm denied the claim.  (Compl., at ¶ 14; doc. 36, DX 5; doc. 38, PX 3.)  State Farm gave several reasons  for the denial of Fair's claim:  (1) Fair had "not met [his] duty under the policy of providing bills, receipts and related documents;" (2) State Farm's "comprehensive investigation" determined that "an accidental loss did not occur;" and, (3) their investigation concluded that Fair "made false statements with the intent to conceal or misrepresent material facts and circumstances regarding the claim."  (Doc. 38, PX 3, at 1, 3.)

---

[2]The interview was conducted on Friday, Dec. 6, 2002, although the page headers read "Dec. 16, 2002." (Doc. 36, DX 7, at 1, 18.)  Dec. 16, 2002, was a Monday.

On Oct. 8, 2004, Fair filed suit in the Circuit Court for the County of Genesee, Michigan.  His complaint contains a single claim, an allegation that State Farm's denial of Fair's insurance claim constitutes a breach of contract. (Doc. 36, DX 4, compl., at ¶¶ 16-17.)  State Farm removed the suit, on the basis of diversity of citizenship, to the U.S. District Court for the Eastern District of Michigan.  (Doc. 1.)   State Farm subsequently moved for a transfer of venue to this court, which was granted.  (Doc. 16.)

Currently before the court is State Farm's motion for summary judgment. (Doc. 35-37.)

## I. SUMMARY JUDGMENT

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist.  See Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court has held that:

> . . . Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party:

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Id. at 324.

The Sixth Circuit in Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), has interpreted Celotex and two related cases, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co., Ltd. v. Zenith Radio, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions.  Street points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. Street, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Id.  In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion.  Kraus v. Sobel Corrugated

4

<u>Containers, Inc.</u>, 915 F.2d 227, 229 (6th Cir. 1990).  However, the court is not required to ignore a party's own conflicting statements.  <u>Bonds v. Cox</u>, 20 F.3d 697, 703 (6th Cir. 1994).

## II.  STATE FARM'S MOTION

The single claim contained in the complaint is an allegation that State Farm's denial of Fair's claim constitutes a breach of contract.  (Doc. 36, DX 4, compl., at ¶¶ 16-17.)  State Farm argues that the policy contains a provision requiring that any suit against the insurer must be commenced within one year of the date of loss.  Because Fair filed his suit more than one year and ten months after the date of the loss, the suit is contractually time-barred.  (Doc. 37, memorandum in support, at 7-8.)

Fair asserts that he "includes in the general allegations of his complaint an action for bad-faith."  (Doc. 38, at 6.)  In response, State Farm contends that it was reasonably justified in denying Fair's claim, and that any tort claim for bad faith fails as a matter of law.  <u>Id.</u> at 8-17.

### A.  Limitations Period

Section I of the Renters Policy, Coverage B ("Personal Property"), is the relevant coverage provision.  Among the "Conditions" is the following provision:

> 7.  Suit Against Us.  No action shall be brought unless there has been compliance with the policy provisions.  The action must be started within one year after the date of loss or damage.

(Doc 36, DX 3, policy, FP-7954, at 12.)

State Farm points out that the date of loss was Nov. 26, 2002, as alleged in the complaint.  (Doc. 37, at 8, citing compl., at ¶ 5.)  Fair filed suit on Oct. 8, 2004, over one year and ten months after the date of loss, and over one year and five months from the date of the May 6, 2003, denial letter.  Thus, State Farm contends that the suit is time-barred.

Both parties recognize that the general statute of limitations for contract claims in Ohio is fifteen (15) years, but acknowledge that insurance policies fall outside the general category.  (Doc. 37, at 8; doc. 38, at 2-3.)

The Supreme Court of Ohio long ago ruled on this issue as follows:

> The parties to a contract of insurance may, by a provision inserted in the policy, lawfully limit the time within which suit may be brought thereon, provided the period of limitation fixed be not unreasonable.

Appel v. Cooper Ins. Co., 76 Ohio St. 52, 80 N.E. 955 (1907) (syllabus).  More recently, the Cuyahoga County Court of Appeals specifically stated:

> Parties to an insurance contract may lawfully limit the time within which suit may be brought on the contract if the period fixed in the policy is reasonable and unambiguous.  In Ohio, a twelve-month contractual limitation provision has been deemed reasonable, valid, and enforceable.

Spremulli's Am. Serv. v. Cincinnati Ins. Co., 91 Ohio App.3d 317, 320, 632 N.E.2d 599, 601 (Ohio Ct. App. 1992) (citations omitted).

### 1.  Fair's Response

Fair argues that his permissible time for filing suit was "unreasonably short since the plaintiff did not receive notice of denial until May 6, 2003,"

6

which in effect gave him six months to file suit.  He contends that Ohio courts have held that the one-year period should not be enforced if it is unreasonable. (Doc. 38, at 3, citing <u>Hounshell v. American States Ins. Co.</u>, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981).)

The implied waiver of the one-year limitations period in <u>Hounshell</u> was not triggered by a routine claim investigation.  Rather,

> ". . . a waiver in these types of cases may occur when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract."

<u>Broadview Sav. & Loan Co. v. Buckeye Union Ins. Co.</u>, 70 Ohio St.2d 47, 50, 434 N.E.2d 1092, 1094 (1982) (per curiam) (quoting <u>Hounshell</u>, 67 Ohio St.2d at 431-432, 424 N.E.2d 311).  In <u>Hounshell</u>, the court found that, "by making these settlement offers, [insurer] waived its right to assert the one-year limitation of action defense contained in the policy of insurance."  <u>Id.</u>

Fair does not point to any settlement offers, or any indication from State Farm that "evidences a recognition of liability under the policy," which might have led him to delay filing his suit.  Instead, the evidence rather clearly indicates that State Farm evinced a skepticism about the merits of the claim from an early date.  <u>See, e.g.</u>, doc. 36, DX 8, Fair dep., at 114 ("Did this loss really occur, sir?"); Fair dep., at 115 ("Are you aware, sir, that insurance fraud is a fourth degree felony in the State of Ohio?").  Fair does not point to conduct

7

by State Farm which would provide any support for a waiver of the one-year period.

It is unremarkable that a contractual limitations period would begin to run on the date that the right of action arising from a contractual obligation accrues (here, the date of loss), rather than some other event.  See, e.g., Kraly v. Vannewkirk, 69 Ohio St.3d 627, 628, 635 N.E.2d 323, 324 (1994) (syllabus). Even if the law provided otherwise, Fair failed to file suit within one year from the notice of denial on May 6, 2003.

Fair also asserts that a "one-year statute of limitations on a claim arising from an insurance contract was found to be unenforceable and void as against the public policy."  (Doc. 38, at 3, citing Miller v. Progressive Cas. Ins. Co., 69 Ohio St.3d 619, 635 N.E.2d 317 (1994).)  The "public policy" at issue in Miller was the contentious area of uninsured or underinsured motorist coverage.  See also Kuhner v. Erie Ins. Co., 98 Ohio App.3d 692, 649 N.E.2d 844 (Ohio Ct. App. 1994) (UIM coverage).  In voiding the provision at issue in Miller, the court found that "the effect of the policy provision was to deprive appellants of the coverage required by R.C. 3937.18 [the uninsured -underinsured coverage statute ]."  Miller, 69 Ohio St.3d at 623, 635 N.E.2d at 320.  Thus, the court held that:

> A provision in a policy for uninsured or underinsured motorist coverage which precludes the insured from commencing any action or proceeding against the insurance carrier for payment of uninsured or underinsured motorist benefits, unless the insured

8

> has demanded arbitration and/or commenced suit within one year
> from the date of the accident, is void as against public policy.

Miller, 69 Ohio St.3d at 619, 635 N.E.2d at 318 (syllabus).

Miller is inapposite.  The coverage at issue in this case is a renters policy, not uninsured or underinsured motorist coverage.  Fair does not make the case that the public policy of the State of Ohio is adversely impacted by the provisions of his renters policy.

State Farm is entitled to judgment as a matter of law on the contractual limitations issue.

## B.  Bad Faith Claim

Although the complaint explicitly alleges only a claim for breach of contract, doc. 36, DX 4, compl., at ¶¶ 16-17, Fair asserts that "the general allegations of his complaint [allege] an action for bad-faith," doc. 38, at 6.

Under the liberal rules of notice pleading in federal courts, the complaint need only include "a short and plain statement of the claim," which will give a defendant fair notice of the claim and the grounds on which it is based.  Hill v. Blue Cross & Blue Shield of Mich., 409 F.3d 710, 721 n.5 (6th Cir. 2005); Minadeo v. ICI Paints, 398 F.3d 751, 762 (6th Cir. 2005).  The fact that defendant addresses this claim in its motion for summary judgment demonstrates that the complaint gave the defendant fair notice of the "bad faith" claim.

State Farm contends that it was reasonably justified in denying Fair's claim, and that any tort claim for bad faith fails as a matter of law.  (Doc. 37, at 18.)  Although Fair addresses the issue of a limitations period for "bad faith" claims in his memorandum in opposition, doc. 38, at 6, State Farm does not rely on a limitations argument, but addresses the claim on its merits.  (<u>See generally</u> doc. 37, at 8-18.)

An insurer has the duty to act in good faith in the handling and payment of the claims of its insured.  <u>Hoskins v. Aetna Life Ins. Co.</u>, 6 Ohio St.3d 272, 452 N.E.2d 1315, 1316 (1983) (syllabus).  In <u>Zoppo v. Homestead Ins. Co.</u>, the Ohio Supreme Court reaffirmed that "an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." <u>Zoppo v. Homestead Ins. Co.</u>, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994) (syllabus), <u>cert. denied</u>, 516 U.S. 809 (1995).  The court clarified that intent is not an element of the "reasonable justification" standard.  <u>Id.</u> at 555, 644 N.E.2d at 400.

The <u>Hoskins</u> court stated that:

[m]ere refusal to pay insurance is not, in itself, conclusive of bad faith.  But when an insurer insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, " . . . such a belief may not be an arbitrary or capricious one.  The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor."

Hoskins, 6 Ohio St.3d at 277, 452 N.E.2d at 1320 (quoting Hart v. Republic

Mut. Ins. Co., 152 Ohio St. 185, 87 N.E.2d 347 (1949)).

If the court finds, "after viewing the evidence in a light most favorable to

the insured, that the claim was fairly debatable and the refusal was premised

on either the status of the law at the time of the denial or the facts that gave

rise to the claim," then summary judgment for the insurer is appropriate.

Tokles & Son, Inc., v. Midwestern Indem. Co., 65 Ohio St.3d 621, 630, 605

N.E.2d 936, 943 (1992).  See also Keyser v. UNUM Life Ins. Co. of America, No.

C2-03-138, 2005 WL 2230203, at *9 (S.D. Ohio Sept. 12, 2005) (citing Tokles).

Thus, the court will review the evidence upon which State Farm relied to

deny the claim, to determine whether the claim was "fairly debatable," whether

there was "reasonable justification" to deny the claim, or whether the denial

was "arbitrary or capricious."

State Farm contends that "there are five major issues in particular which

should leave no doubt that Plaintiff's claim is at a minimum 'fairly debatable.'"

(Doc. 37, at 9-10.)

### 1.  Initial report of burglary

The first issue concerns conflicting statements that Fair made as to how

he initially discovered that his apartment had been burglarized.   State Farm

points to a conflict between the account Fair gave in his interview with the

insurance investigator on Dec. 6, 2002, and the subsequent account he gave in

his sworn  deposition on Jan. 9, 2003.  In the first account, he went home to

11

check his mail, and on going upstairs to his third-floor apartment, he noticed that his door was open.  In the second account, he was driving down the street, and, from his car, noticed that his third-floor apartment door was open. <u>Compare</u> doc. 36, DX 7, at 15-16, with DX 8, at 55-57.

State Farm also points out that, according to the report of the responding police officer, Fair told the police that he had not yet entered his apartment, but stated that "all his property & Christmas presents are gone."  (Doc. 36, DX 9, Parma Police report, Attachment A.)  The officer also commented that Fair "began itemizing all the property that was taken only after a brief glance around his ap[artmen]t."  The officer's report stated that further investigation was warranted, based on Fair's "apparent deceiving nature and his conflicting comments." <u>Id.</u>

### 2.  Apartment door

The second issue for State Farm was the issue of forcible entry into Fair's apartment.  As part of the claim investigation, a forensic locksmith examined the door and frame, and concluded that there was no physical evidence of forced entry.  (Doc. 37, at 12; doc. 36, DX 10.)

### 3.  Property taken

State Farm was also concerned about inconsistencies regarding the stolen property.  The police report reflects that Fair told the police that $3,500 in cash, which was stolen, had been left on his bedroom dresser before he left for

12

Michigan.  (Doc. 37, at 13; doc. 36, DX 9.)  At the Jan. 9 deposition, he stated that the money had been hidden under the mattress.  (Doc. 36, DX 8, at 65-66.)

Also, the police report noted:  "The victim stated that he has renters insurance and began itemizing his valuable property, however, he was unable to name brand names of his electronic property including his personal computer and TV, VCR and DVD players."  (Doc. 36, DX 9.)  State Farm notes that in his "Sworn Proof of Loss," Fair identified the brand names of most of the stolen electronics (including two video game players, two DVD players, one television, one VCR, and a digital camera).  (Doc. 37, at 14; Doc. 36, DX 11.)  State Farm questions how Fair could provide these brand names later, when he was unable to supply them in the police report.  Fair testified that all his receipts[3] were contained in a briefcase, which was stolen as well.  (Doc. 36, DX 8, at 71-73, 93.)

### 4.  Building manager's statement

The fourth issue involves a recorded statement provided by the building manager.  (Doc. 37, at 14-15.)  She stated that it was her belief, based on maintenance visits to Fair's apartment, that Fair did not have "basically any furniture or items within his apartment," and that she did not believe he was being truthful.  (Doc. 36, DX 12, at 4.)  State Farm notes again that the responding police officer doubted Fair's veracity as well.

---

[3]The court notes that all of the receipts would have been cash receipts. Although Fair had a credit card and a checking account, he testified that all of the stolen items were purchased with cash.  (Doc. 36, DX 8, at 71, 87-88.)

13

### 5.  Altered cellular phone records

The final issue is "the alteration of the cellular phone records requested by State Farm." (Doc. 37, at 15.)  Fair had stated that, when he discovered his apartment door open, he did not enter, but crossed the street to ask employees at a trucking company to call the police for him.  He stated that he had a cell phone, but that his battery was dead.  (Doc. 37, at 15-16, citing DX 8, at 95-96.)

State Farm requested his cell phone records for the time of the incident. Fair provided records which appeared to be altered.  After investigation, and the receipt of Fair's records directly from Nextel, it appeared that Fair had provided an altered copy of his son's (Eddie Fair, Jr.) cell phone records, rather than his own.  (Doc. 37, at 16-17, citing DX 13-DX 14.)  Fair's actual phone records indicated that he received a phone call at 12:05, during the time which he testified that his phone was dead.

### 6.  Independent evaluation

State Farm emphasizes that an independent attorney, Joseph Ritzler ("Ritzler"), not employed by State Farm, was retained to examine the claim, and to make a  recommendation.  Ritzler recommended the denial of Fair's claim. (Doc. 37, at 17; doc. 36, DX 15-16.)  Ritzler based his recommendation on several factors, including Fair's failure to document his loss with "receipts, owners manuals or any other type of independent corroboration that he owned  the items that he claimed," the lack of any sign of forced entry, and the fact that the thieves would have had to make several trips up and down the stairs (unseen)

14

to remove all of the stolen items.  (Doc. 36, DX 15, at 5.)  According to Ritzler: "Simply put, Mr. Fair has not provided evidence supporting this theft loss claim."  Id. at 6.

In summary, State Farm contends that its investigation cannot be found "arbitrary or capricious," and that there was reasonable justification for the denial of Fair's claim.  State Farm argues that "the evidence was, at a minimum, fairly debatable as to whether Plaintiff has sustained a loss, if not overwhelmingly conclusive of attempted insurance fraud."  (Doc. 37, at 17-18.)

### 6.  Fair's Response

Fair responds that "good faith is a question of fact, not a rule of law and is thus within the province of the jury."  (Doc. 38, at 7, citing City of Indianapolis v. Domhoff & Joyce Co., 42 N.E.2d 207 (Ohio Ct. App. 1941)). However, since the cited 1941 appellate court decision, the Ohio Supreme Court has apparently decided to the contrary, ruling that:

> . . . to grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim.

Tokles, 65 Ohio St.3d at 630, 605 N.E.2d at 943.  Summary judgment is not improper on the question of good faith, in this context.

Fair stresses his cooperation with the insurance claim investigation. (Doc. 38, at 7.)  The issue for the court here is not whether Fair's claim itself

was in good faith or not, but whether the insurer lacked good faith in denying the claim, that is, whether there was a "reasonable justification" for the denial.

Fair does not address most of the concerns that State Farm raised, other than to argue that his contradictory statements are issues of fact.  However, in ruling on a motion for summary judgment, the court is not required to ignore any such  conflicting statements.  Bonds, 20 F.3d at 703.

### 7.  Reasonable Justification

The various evidence that State Farm assessed in its investigation of Fair's claim of loss supplies a reasonable justification for the denial of the claim. The court cannot find that State Farm's refusal to pay the claim was arbitrary or capricious.

Viewing the totality of the evidence in the light most favorable to Fair, the court is not troubled that Fair may have forgotten whether he left his cash on a dresser or under a mattress.  Nor does the building manager's assessment of Fair's veracity weigh heavily.

Less easily dismissed are the divergent accounts of how the burglary was discovered, the lack of evidence of forcible entry, the apparently altered cell phone records, and the police officer's report that Fair had not yet entered his apartment, but stated that "all his property" was gone.  In addition, while the court recognizes that many individuals choose to conduct their business in cash, the insurance policy does  require "receipts and related documents" to substantiate the loss.

16

### III.  SUMMARY

State Farm's motion for summary judgment (doc. 35) is granted.  State Farm is entitled to judgment on the contractual limitations issue, because Fair's suit was filed outside the one-year limitation period.  As to the bad faith claim, the court cannot find that State Farm's refusal to pay the claim was arbitrary or capricious.  The denial of the claim was based on circumstances that furnished reasonable justification for State Farm's action.

IT IS SO ORDERED.


Dated:   April 12, 2006                              /s/ Kenneth S. McHargh
                                                    Kenneth S. McHargh
                                                    United States Magistrate Judge

17